MARILYN PFAB, appellee, v. WALTER H. PFAB, appellant.

No. 51565.

(Reported in 132 N.W.2d 483)

304

JANUARY 12, 1965.

Kenline, Reynolds, Roedell & Breitbach, of Dubuque, for appellant.

Clewell, Cooney & Fuerste, of Dubuque, for appellee.

MOORE, J.—On January 2, 1964, the trial court granted plaintiff, Marilyn Pfab, 35, a divorce from her husband, Walter H. Pfab, 37. The court gave plaintiff the care and custody of their three minor children, Sherry Lou, 14, Gary X, 12, and Polly, 3, subject to the right of reasonable visitation by defendant. As child support he was ordered to pay $20 per week per child until such child reached the age of eighteen years, died, became self-supporting or until further order of the court.

As property division plaintiff was given the Dubuque three-bedroom ten-year-old family home valued at $16,000, subject to a $10,000 mortgage which plaintiff would be required to pay at $110 per month. For brevity we omit the legal descriptions as set out in the decree. The family household furnishings were also awarded to her as was a 1962 Oldsmobile mortgaged for $1700 which defendant was ordered to pay.

Plaintiff was also granted the Otter Creek, Jackson County, farm jointly owned by the parties, valued at $26,000, subject to a $14,000 mortgage.

Defendant was awarded the former home property at Bernard, Dubuque County, valued at $15,000, subject to a mortgage of between $10,000 and $11,000. Also a 300-acre farm near Monticello, Jones County, purchased on contract two or three years before the divorce for $90,000 on which a balance of $71,000 was owing.

Defendant was also given all interest in a nightclub which he had purchased for $1500, his interest in a building which he was attempting to sell for $2000 and seven used cars which defendant testified were mortgaged to the extent of their value.

The decree provided each party should bear the expense of his or her own attorney fees. Costs were taxed against defendant.

Defendant has appealed. He makes no complaint concerning that part of the judgment and decree granting her a divorce, the custody of the children, the home property, the household furnishings and the automobile.

Defendant contends (1) the child support allowance is excessive and (2) the property division is not fair and equitable.

Section 598.14, Code, 1962, provides: "Alimony—custody of children—changes. When a divorce is decreed, the court may make such order in relation to the children, property, parties, and the maintenance of the parties as shall be right. * * *."

We have frequently stated equitable property division and allowance of child support in divorce cases are peculiarly dependent on the facts of each case. Among the matters to be considered are parties' age, health, present capacity to earn, amount of resources owned by each or both parties, contributions of each to the joint accumulations, the children involved, the duration of the marriage, indebtedness of each or both, conduct of the guilty party, and other facts which assist the court in reaching a just and equitable decision. Nelson v. Nelson, 246 Iowa 760, 768, 68 N.W.2d 746, 751; Alberhasky v. Alberhasky, 250 Iowa 986, 1001, 97 N.W.2d 914, 924; Rider v. Rider, 251 Iowa 1388, 1390, 105 N.W.2d 508, 510; Weiland v. Weiland, 255 Iowa 477, 480, 122 N.W.2d 837, 839.

█ The misconduct of the guilty party which brings about a divorce is material in considering what is equitable in the way of division of property. Murray v. Murray, 244 Iowa 548, 554, 57 N.W.2d 234, 238; Farrand v. Farrand, 246 Iowa 488, 492, 67 N.W.2d 20, 22.

█ Plaintiff and defendant were married February 10, 1948. Three children were born of their marriage. They first lived in Maquoketa, then in Bernard, Dubuque County, for eight years and on December 6, 1960, moved to the City of Dubuque where defendant was engaged in the used car business and plaintiff was teaching.

No trouble between the parties is indicated until after they moved to Dubuque. Before that defendant had been a farmer, trucker and a used car dealer. In the latter pursuit he had been very successful. Plaintiff materially contributed to their financial success, caring for the family and working as a schoolteacher. According to statements made by defendant they were worth at least $200,000 before defendant started his course of misconduct.

Within three weeks after they moved to Dubuque defendant began consorting with a married woman. She was later divorced. He hired her as his secretary at the used car establishment and later gave her an automobile. They spent several nights a week in taverns in or near Dubuque where defendant spent large sums. They made trips to Chicago, Texas and Omaha and on one trip had an accident. Considerable publicity resulted, after which defendant ceased telling plaintiff falsehoods about his activities. He then expressed his love for his paramour and refused to give her up. His course of misconduct, despite the many pleas of plaintiff and the efforts of their clergyman, continued up to the divorce. Defendant testified only regarding financial matter.

The inevitable happened. Defendant's used car business was reduced to a part ownership in seven mortgaged used cars. Defendant was selling cars for other dealers at the time of the divorce. He had purchased a nightclub in Monticello which he was managing. According to defendant it was "breaking even". He was making the house payments but otherwise was contributing very little to his family. Plaintiff, to supplement her teaching salary of $3000 per year, took a job working evenings at a country club where she earned $1.25 per night plus tips.

Defendant's primary contention as to property division is that he should be given the Otter Creek, Jackson County, farm. It is unimproved farmland of 280 acres which was acquired by defendant's father in 1955 for $24,000 and deeded to plaintiff and defendant as joint tenants subject to the mortgage. This farm at the time of the divorce was in the soil bank with an income of $4300 per year.

The Bernard town property awarded to defendant was rented for $100 per month.

The Monticello, Jones County, farm (known as the R. L. Hyde farm) awarded to defendant is a 300-acre improved farm. The buildings on it are not described in the record. It was purchased on contract for $90,000 with a $10,000 down payment. At the time of the divorce the balance owing had been reduced to $71,000. It was rented for $8000 per year. At the time of the divorce the tenant owed defendant several thousand dollars. Defendant apparently felt secure. He had taken no action to force payment.

In addition to the secured obligations and current taxes defendant had several outstanding unsecured debts, including a $7000 bank note, a $5500 note to his father, $2000 on account to a body and fender shop and $7500 to a partner for used cars. The evidence does not disclose defendant was being pushed for payment by any of the creditors.

Plaintiff argues she desperately needs the Otter Creek farm to use its income to pay the house and farm mortgages and to hold it as a reserve for the children's higher education. We agree.

Except for impairment of her health by defendant's actions, plaintiff has enjoyed good health. She has two years' college education and will apparently be able to continue teaching.

Defendant also has good health. He did not finish high school but has developed an ability to make money. If he will apply himself, he is capable of reestablishing himself in business and paying the child support ordered. Of course if he continues a life of drinking and philandering his children will suffer. His future is entirely within his own control. We approve the child support order.

It is our conclusion the decree should not be changed.— Affirmed.

All JUSTICES concur.